IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| BARBARA HENDRIX, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
|    v. ) | 2:07cv21-MHT |
| ) | (WO) |
| DOUGLAS CHAMBERS, etc., ) | |
| et al., ) | |
| ) | |
|    Defendants. ) | |

OPINION

Plaintiff Barbara Hendrix, a white female teacher at J.F. Ingram State Technical College, asserts that certain college administrators subjected her to race and gender discrimination and a hostile-work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 1981a, 2000e to 2000e-17), the Civil Rights Act of 1866, as amended (42 U.S.C. § 1981), and the equal protection clause of the United States Constitution (as enforced through 42 U.S.C. § 1983), as well as subjected her to harassment in violation of state law.  Hendrix names the following Ingram State

administrators as defendants in their official and individual capacities: Douglas Chambers, President; James Wilson, Dean of Students; Malcolm Montgomery, Coordinator of Student Support Services; and James T. Merk, Dean of Instruction. Hendrix asserts jurisdiction for the federal-discrimination claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights), and the state-law claim is properly before this court under supplemental jurisdiction, 28 U.S.C. § 1367.

This case is currently before the court on the defendants' motion for summary judgment. For the reasons that follow, the motion will be granted.

### I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule

56, the party seeking summary judgment must first inform the court of the basis for the motion, at which point the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor

of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. FACTS

Hendrix teaches horticulture to prison inmates at Ingram State, a two-year college established to provide occupational training to incarcerated adult felons.  In February 2006, Hendrix noticed an inmate, Rodney Pruitt, in the greenhouse.  She believed that he was masturbating and sent another inmate in to check.  That inmate reported that Pruitt was not misbehaving but unscrewing a hose.  Hendrix nevertheless went to the Student Services Department to report Pruitt's misconduct.  Because Dean of Students Wilson was not on campus, Hendrix reported Pruitt's behavior to Student Support Services Coordinator Montgomery.  Montgomery asked Hendrix, "Can you show me what you think you saw him doing?"  Hendrix then demonstrated Pruitt's masturbating.

She was, however, embarrassed and humiliated by the demonstration.

An hour later, Hendrix was called into a meeting about the incident with Dean Wilson and Coordinator Montgomery along with Dean of Instruction Merk and the inmate who had observed Pruitt. All three administrators are male; Wilson and Montgomery are black, and Merk is white. Hendrix felt ill at ease as the only woman in a discussion of a male inmate's masturbating and asked that Leigh Ann Roberts, Wilson's secretary and a white female, be present. Because Roberts lacked experience in student disciplinary matters, Wilson instead brought in Bonita Owensby, a black female who is routinely involved in student discipline. At the meeting, Hendrix was asked to describe what she saw and was humiliated by having to do so. Following the meeting, Pruitt was removed from the school.

The next day, Hendrix sent Dean Merk and Ingram State President Chambers a memorandum of the meeting.

Approximately a week later, she filed grievances against Coordinator Montgomery and Dean Wilson, and Dean Merk was appointed to investigate them.  Hendrix grew dissatisfied with the nature of Merk's investigation into the incident; she thought it biased and untimely.  She also expressed concern about Merk's failure to take corrective action on her prior complaints about student behavior, as well as the lack of security cameras in the horticulture area.[1]  Ultimately, the investigation ended with no corrective action taken against Montgomery and Wilson.

Hendrix then brought this suit against President Chambers, Deans Wilson and Merk, Coordinator Montgomery. She charged race and gender discrimination, a hostile-work environment, and state-law harassment.

---

1.  In her amended complaint, Hendrix noted that the defendants requisitioned a purchase order for security cameras on May 23, 2006, but that no funds were allocated for purchasing the cameras.  Am. Compl. (Doc. No. 12), at 1.

III. DISCUSSION

A. Title VII

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] ... sex." 42 U.S.C. § 2000e-2 (a)(1). Hendrix charges both race and gender discrimination as well as the creation of a hostile-work environment.

Congress expressly made a private plaintiff's court filing of a Title VII claim contingent on having previously pursued administrative remedies with the Equal Employment Opportunity Commission (EEOC). 42 U.S.C. § 2000e-5(f). A court, therefore, may not hear a plaintiff's Title VII claim if the plaintiff has not first filed an administrative charge with the EEOC. Hines v. Widnall, 334 F.3d 1253, 1257 (11th Cir. 2003)

7

("[The plaintiff's] failure to file an EEOC claim absolutely bars his claims."); Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) (filing with the EEOC is "a jurisdictional prerequisite to a Title VII action"); Grier v. Sec'y of Army, 799 F.2d 721, 724 (11th Cir. 1986) ("The first mention of an improper racial basis for the hiring of the selectee is in [the] complaint filed in this action. Thus, the 'complaint of discrimination' required by [Title VII] was never filed, and plaintiff's complaint must be dismissed.").

## B. § 1981

A claim under 42 U.S.C. § 1981 is allowable even in the absence of an EEOC administrative charge. Caldwell v. Nat'l Brewing Co., 443 F.2d 1044, 1046 (5th Cir. 1971) (a plaintiff "has an independent remedy under § 1981

without respect to exhaustion under Title VII").[2] Nevertheless, Hendrix cannot prevail on her § 1981 claim.

First, § 1981 covers racial discrimination, not gender discrimination. Hervey v. City of Little Rock, 787 F.2d 1223, 1233 (8th Cir. 1986) ("Since § 1981 does not apply to sex discrimination, [plaintiff] could only recover on this claim under § 1983.").

Second, Hendrix cannot make out a prima-facie case for either racial discrimination or a racially hostile-work environment. Claims under § 1981 may be established using the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002); Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318 (11th Cir. 1998). According to this framework, the plaintiff must first establish a prima-facie case, Standard, 161

---

2. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

9

F.3d at 1330; next, if established, the employer must produce a legitimate, nondiscriminatory reason for its actions, id.; finally, if produced, the plaintiff must prove that the employer's articulated legitimate, nondiscriminatory reason was a pretext for unlawful intentional discrimination. Id.

The court presumes that Hendrix's race discrimination claim is meant as a disparate-treatment claim. To establish a prima-facie case of disparate treatment in a race discrimination case, Hendrix may show that (1) she is a member of a protected class; (2) she was subjected to an adverse-employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job. Burke-Fowler v. Orange County, 447 F.3d 1319, 1323 (11th Cir. 2006). First, Hendrix has failed to show that any similarly situated non-white employees were treated differently--that is, that a non-white employee who reported inmate

masturbation was not asked to demonstrate that behavior and did not have to attend two meetings. Second, Hendrix does not establish that she was subjected to an adverse-employment action. To do so, she would have to show "a <u>serious and material</u> change in the terms, conditions, or privileges of employment ... [that is] materially adverse as viewed by a reasonable person in the circumstances." <u>Davis v. Town of Lake Park</u>, 245 F.3d 1232, 1239 (11th Cir. 2001). There is no evidence that Hendrix was terminated, demoted, or transferred, or that she suffered a loss of wages or benefits. Instead, she alleges only that she was required to demonstrate the inmate's behavior and that she was required to discuss the incident at two meetings. These actions cannot constitute adverse-employment actions.

Hendrix has also failed to make out a racially hostile-work-environment claim. To establish such a claim, she would need to show that (1) she belongs to a protected group; (2) she has been subject to unwelcome

11

harassment; (3) the harassment was been based on a protected characteristic of the employee, such as race; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the hostile environment under a theory of vicarious or direct liability.  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  Hendrix has offered no evidence that the alleged harassment was so severe or pervasive as to alter the terms and conditions of her employment.  Hendrix has not shown a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

Finally, even if Hendrix could make out such a race-based disparate treatment or hostile-work-environment

claim, the defendants are protected by the Eleventh Amendment and qualified immunity. The Eleventh Amendment bars Hendrix's claims for money damages against all four defendants in their official capacity, as Ingram State is an arm of the State of Alabama, see Harden v. Adams, 760 F.2d 1158, 1158, 1163 (11th Cir. 1985) ("The Alabama Supreme Court has held ... that state universities ... are agencies or instrumentalities of the state."), and any monetary award against the defendants would therefore be taken from the State's coffers. See Edelman v. Jordan, 415 U.S. 651, 663 (1974). Furthermore, the defendants are protected from individual-capacity claims by qualified immunity. In a qualified-immunity analysis, the first question is whether the plaintiff's allegations, if true, establish a constitutional violation; only then does the court reach the question of whether the constitutional right was clearly established. Hope v. Pelzer, 536 U.S. 730, 736-39 (2002). As explained above, Hendrix has alleged no constitutional

13

violation, and the court need not proceed further in the analysis. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1200 (11th Cir. 2007) ("If the official did not violate the law, the inquiry ends.").

### C. Equal Protection Clause

Hendrix claims that the defendants discriminated against her because of her sex, in violation of the equal protection clause of the United States Constitution. Under this clause, individuals "have a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment." Cross v. Alabama, 49 F.3d 1490, 1507 (11th Cir. 1995); Davis v. Passman, 442 U.S. 228, 234-35 (1979). While the Supreme Court "does not regard as identical the constraints of Title VII and the Federal Constitution, when section 1983 is used as a parallel remedy for violation of Title VII, the elements of the two causes of action are the same." Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th

Cir. 2005) (citations omitted).  As such, the court restates, for Hendrix's sex-based claim, its conclusions with regard to Hendrix's § 1981 race-based claim: she cannot make out a prima-facie case for disparate treatment (because there was no adverse-employment action and because there was no similarly situated person outside her protected class, in this instance a male), and she cannot make out a prima-facie case for a hostile-work environment.

### D. State-Law Harassment

Hendrix brings her final cause of action under state-law harassment.  In Alabama, harassment claims do not present an independent cause of action but must proceed under other common-law tort theories.  <u>Stevenson v. Precision Standard, Inc.</u>, 762 So.2d 820, 825 n.6 (Ala. 1999).  State-law sexual-harassment claims have been grounded in battery, <u>see</u> <u>Ex parte Atmore Cmty. Hosp.</u>, 719 So.2d 1190, 1194 (Ala. 1998), invasion of privacy, <u>see</u>

15

id., negligent training and supervision, see Mardis v. Robbins Tire & Rubber Co., 669 So.2d 885, 889 (Ala. 1995), and outrage, see Stabler v. City of Mobile, 844 So.2d 555, 560 (Ala. 2002), but Hendrix has made no allegations that would support any such a tort action.

Nevertheless, the court has paid special attention to the tort of outrage, which seems the most likely theory under which Hendrix might have proceeded.  To be liable for outrage, a person must "by extreme and outrageous conduct intentionally or recklessly cause[] severe emotional distress to another. ... The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it."  Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 840 (Ala. 2003).  For a plaintiff to recover, the defendant's conduct must have been "extreme" conduct, which is conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

society." Id. While the defendants' behavior here may have been insensitive or made Hendrix uncomfortable, she has presented no evidence suggesting that their conduct reached such an intolerable level. See Am. Road Serv. Co. v. Inmon, 394 So.2d 361, 364-65 (Ala. 1980 (no recovery for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities").

\* \* \*

For the foregoing reasons, the defendants' motion for summary judgment will be granted. An appropriate judgment will be entered.

DONE, this the 22nd day of February, 2008.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE